No. 9522.

THE PEOPLE *v.* THE WESTERN UNION TELEGRAPH COMPANY, ET AL.

Decided April 4, 1921.

Criminal prosecution under the Anti-Coercion Act. Act held unconstitutional and defendants discharged.

*Affirmed.*

1. CONSTITUTIONAL LAW—*Anti-Coercion Act.* The Anti-Coercion Act, chap. 5, S. L. 1911, held to be in violation of the "due process" clause of the federal constitution.

2. COURTS—*Jurisdiction Over Constitutional Questions.* Trial courts have jurisdiction to determine federal constitutional questions, notwithstanding the provisions of sec. 1, art. VI of the state constitution, providing that the supreme court shall have exclusive jurisdiction to determine such matters.

3. CONSTITUTIONAL LAW—*Jurisdiction—Recall of Decisions.* When a federal constitutional question is raised in any of the trial courts of Colorado, the right is given and the duty imposed upon those courts to adjudicate and determine it.

Decisions of the supreme court upon such questions cannot be reviewed by popular vote of the citizens of Colorado or one of its municipalities, and any pretended constitutional provision of this state assuming to provide such method of review is null and void.

*Error to the District Court of the City and County of
Denver, Hon. John H. Denison, Judge.*

Mr. WILLIAM E. FOLEY, district attorney, Mr. T. E. MC-
INTYRE, assistant, for the people.

Mr. T. J. O'DONNELL, Mr. J. W. GRAHAM, Mr. G. W.
MUSSER, for defendants in error.

Messrs, MELVILLE, MELVILLE & WALTON, Mr. THOMAS H.
GIBSON, Mr. HORACE N. HAWKINS, Mr. HARVEY RIDDELL,
*Amici curiae.*

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

IN this cause an information was filed in the trial court.
against the defendants charging them with a violation of
chapter 5, Session Laws of 1911, known as "The Anti-
Coercion Act," in that as a condition to the continued em-
ployment of one Holson they required of him a contract
that he sever his connection with The Commercial Teleg-
raphers' Union of America, and upon his refusal to comply
discharged him. To this information defendants demurred
on the ground that "the Anti-Coercion Act" was unconsti-
tutional under the Bill of Rights of the State of Colorado
and the XIV amendment to the Federal Constitution. To
the consideration of this issue the people objected on the
ground that such consideration was prohibited by amended
sec. 1, art. VI of the State Constitution.

The objection was overruled, "the Anti-Coercion Act"
held in conflict with the Federal Constitution, and final
judgment entered discharging defendants and releasing
their bondsmen. To review that judgment the people bring
this cause here by writ of error under the mandate of sec.
1997, R. S. 1908, which provides:

"Writs of error shall lie on behalf of the state or the
people, to review decisions of the trial court in any crim-
inal case  *  *  *  where a statute is declared unconstitu-
tional. And whenever any act of the legislature, upon

which has been based the indictment or information in any
criminal case, shall be adjudged inoperative or unconsti-
tutional by any district or county court, it shall be the duty
of the district attorney of the judicial district within which
such court making such decision is situate, to sue out a writ
of error on behalf of the people of the state of Colorado
from said supreme court to review the judgment of said
district or county court in this particular. *Provided,* That
nothing in this act shall be construed so as to place a de-
fendant in jeopardy a second time for the same offense."

This cause was orally argued May 13, 1920. Two weeks
prior thereto transcript of the record in cause No. 9823,
*People v. Max,* (198 Pac. 150), this day decided, involving
other phases of the questions herein raised, had been filed
in this court. In both cases defendants had been finally
discharged. No particular injury could therefore be done
by a delay in the final determination hereof. Several mem-
bers of the bar, who had given special study to the ques-
tions involved, were invited by the court to file briefs as
*amici curiae,* (others have since voluntarily done so) and
further consideration was postponed until such time as
*People v. Max* should be at issue and all briefs filed in both.

Burke, J., after stating the facts as above.

Three questions are here presented: The right of the
trial court to hear and determine the federal constitutional
question; the correctness of its judgment; and the date
when our decision becomes effective. For convenience the
second of these will be first considered.

So much of "The Anti-Coercion Act" in question as is
material here reads as follows:

"Section 1. It shall be unlawful for any corporation,
company, partnership, association, individual or any em-
ployer of labor to demand as a condition of employment,
or as a condition of continuing any employment, any con-
tract, agreement or reservation, evidenced by writing or
otherwise, or by condition reserved in any contract, that
the person or persons so employed shall sever any present

connection with or shall refrain from joining any lawful organization or society, or under any pretense whatever to prohibit, limit or restrain such employee from exercising his social, financial, fraternal or business rights in connection with or through any lawful organization or society, during his employment by any employer.

Section 2. Any such contract, agreement or reservation or condition reserved shall be prima facie evidence of the violation of this act.

Section 3. That any corporation, company, partnership, association, individual or any employer of labor, which or who shall violate any provision of this act, shall be deemed guilty of a misdemeanor, and as to any corporation such guilt shall extend to all the officers, directors or trustees thereof and any agent or authority by which such corporation acts, as individuals, and as to any partnership or company, all persons composing the same as individuals, and as to any person the person and his agent shall be guilty as individuals, and upon conviction of any person or persons under the provisions of this act, such person or persons shall be punished by a fine of not less than fifty dollars, nor more than five hundred dollars for each and every repetition of such offense or by imprisonment of not less than ninety days nor more than six months in the County Jail for the County in which such offense was committed, or by both such fine and imprisonment in the discretion of the court." Chap. 5, p. 8, S. L. 1911.

That this act is a plain violation of the Federal Constitution has been clearly determined by the Supreme Court of the United States. *Coppage v. Kansas*, 236 U. S. 1, 35 Sup. Ct. 240, 59 L. Ed. 441, L. R. A. 1915C, 960.

In that case a decision of the supreme court of Kansas was reversed and a statute of that state, in all material particulars identical with the one here under consideration, was declared a violation of the "due process" clause of the United States Constitution.

Having determined that this cause was correctly decided below it may be said that the constitutionality of the "Anti-

Coercion Act" has now, at least, been passed upon by a court having jurisdiction, and it is therefore unnecessary to consider the objection of the people to the hearing on the demurrer. If so the same situation would be presented had we held the act constitutional. Since the passage of the amendment to sec. 1, art. VI, we have assumed the correctness of that rule. However, there has arisen such a disparity of opinion in our trial courts concerning their power to determine constitutional questions, and such a resulting confusion among members of the bar concerning the practice, that it now becomes our imperative duty, under sec. 2, art. VI of our State Constitution, which vests in the supreme court "a general superintending control over all inferior courts," to construe sec. 1, art. VI with reference to the power of such courts where federal constitutional questions are involved.

The jurisdiction of the district court in the premises, prior to January 22, 1913, is undisputed, and is too well settled in this country to admit of argument or require the citation of authority. On that date (if ever) said section 1 became effective. It specifies the courts in which the judicial power of the state shall be vested, and then provides:

"None of said courts except the Supreme Court shall have any power to declare or adjudicate any law of this state or any city charter or amendment thereto adopted by the people in cities acting under Article XX hereof as in violation of the constitution of this state or of the United States." S. L. 1913, p. 678.

Paragraph 2, art. VI of the Constitution of the United States provides:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States shall be the supreme law of the land; and the judges in every state shall be bound thereby; anything in the Constitution or laws of any state to the contrary notwithstanding."

Sec. 8 of art. XII of the State Constitution provides:

"Every civil officer, except members of the General Assembly and such inferior officers as may be by law exempted, shall, before he enters upon the duties of his office, take and subscribe an oath or affirmation to support the Constitution of the United States and of the State of Colorado, and to faithfully perform the duties of the office upon which he shall be about to enter."

It is said that, notwithstanding the provision of the Federal Constitution, above cited, the trial judge was precluded by amended sec. 1 of art. VI of the State Constitution from passing upon the question raised by the demurrer. The answer is that the trial judge was bound by the mandate of the Federal Constitution to apply that instrument upon all proper occasions and to hold it to be the supreme law of the land "anything in the constitution or laws of any state to the contrary notwithstanding." It is said that the judge's oath to support the Constitution of Colorado bound him to give effect to that clause thereof prohibiting him from declaring a legislative act contrary to the Federal Constitution. The answer is that any section of the State Constitution which is contrary to the Federal Constitution is, for that reason and to that extent, null and void. It is no part of the State Constitution and no legerdemain of logic can cover it with the sanctity of a judge's oath.

The reasoning of Chief Justice Marshall in *Marbury v. Madison,* 1 Cranch, 137, 2 L. Ed. 60, 1 U. S. Decisions, 368, is as applicable to a state constitutional provision which violates the Federal Constitution as it is to a Federal Statute which violates that instrument; and his reasoning from the standpoint of the judicial oath as unanswerable here as there. It follows that the trial court in the instant case had the right, and it was its bounden duty, to determine the federal constitutional question raised by the demurrer.

The district attorney, after presenting the question of the right of the trial court to pass upon the constitutional issue, then prays:

"That the law of this State be declared and announced as it is and ought to be in this case and similar cases, that

this question may be judicially, by the opinion of this court, or popularly, under 'Recall of Decisions' by the people, or by both this court and the people, determined and settled in this jurisdiction, with directions by this court for further proceedings in accordance with such opinion or decision of this court, even though, 'that before such decision shall be binding, it shall be subject to approval or disapproval by the people, * * * by referendum petition, * * * (that) may request that such law be submitted to the people of this state for adoption or rejection * * * (and) 'when approved by the votes cast thereon * * * shall be and become the law of this state notwithstanding the decision of the supreme court,—so that by either of, or by both of, such methods, 'such law shall be and become the law of this state' as by said constitutional amendment further provided."

That prayer, taken in connection with the matters herein decided, imposes upon us a further duty under said sec. 2, art. VI of the State Constitution vesting in the supreme court "a general superintending control over all inferior courts." That duty is to declare what effect is to be given this decision, and involves the construction of that part of said amended sec. 1 of art. VI, which immediately follows the portion hereinbefore quoted:

"Provided that before such decision shall be binding it shall be subject to approval or disapproval by the people, as follows: Such decision shall be filed in the office of the clerk of the supreme court within ten days after it is finally made. If it concerns a state law it shall not be binding until sixty days after such date. Within said sixty days a referendum petition, signed by not less than five per cent of the qualified electors addressed to and filed with the Secretary of State, may request that such law be submitted to the people of this state for adoption or rejection at an election to be held in compliance herewith. The Secretary of State shall cause to be published the text of such law or part thereof, as constitutional amendments are published, as near as may be and he shall submit the same to the

people at the first general election held not less than ninety days after such petition shall have been filed; provided that provision may be made by law for also submitting such laws or parts thereof at a special election. All such laws or parts thereof submitted as herein provided when approved by a majority of the votes cast thereon at such election shall be and become the law of this state notwithstanding the decision of the supreme court."

If any doubt can be said to exist as to our duty under said sec. 2, art. VI to here and now interpret the foregoing language, no such doubt can exist as to the absolute necessity for so doing for the guidance and direction of the clerk and reporter of our own court. The clerk must know whether or not it be his official duty to file the decision as therein provided, and the reporter must know whether it is to be published with the other decisions of this court or held in abeyance pending a possible recall.

Immediately following the language of sec. 1 last quoted is a similar provision for the recall of decisions declaring charter provisions of Home Rule cities contrary to the State or Federal Constitution, save that in the latter case the charter provision held unconstitutional is submitted to a vote of the citizens of said city; and it is further provided:

"All such charters, or amendments thereto, so submitted as herein provided, when approved by a majority of the votes cast thereon in said city or city and county, shall be and become the law of this state and of said city or city and county notwithstanding the decision of the supreme court."

We pass without comment such startling declarations as that, in case of approval by the people of a city of a section of its charter, after this court shall have declared it unconstituional, said city charter or amendment "shall be and become the law of this state;" and address ourselves to the fundamental questions underlying each of these provisions for the recall of decisions on federal constitutional questions. If the people of the state be empowered, by the mere re-enactment of a statute which violates the Federal

Constitution, to give full force and effect to such unconstitutional legislation, then that portion of the State Constitution which vests in them such power is itself prohibited by the terms of the Federal compact, and is null and void and of no force or effect whatsoever.

What the whole people of a state are powerless to do directly, either by statute or constitution, i. e., set aside the Constitution of the United States, they are equally powerless to do indirectly, either by a pretended authority granted to a municipality, or by a popular election, under the guise of a recall. The original Constitution of Colorado was a solemn compact between the State and the Federal government, a compact which stipulated that it should never be altered save in the manner therein provided, and that all amendments and all revisions thereof would conform to the supreme law. The whole people of the state have no power to alter it save according to their contract. They cannot do so, even by unanimous consent, if such alteration violates the Constitution of the United States. Should they make the attempt their courts are bound by the mandate of the Federal Constitution, and by the oath they have taken in conformity therewith and with their own Constitution, to declare such attempt futile, to disregard such violation of the supreme compact, and decline to enforce it. There is no sovereignty in a state to set at naught the Constitution of the Union, and no power in its people to command their courts to do so. That issue was finally settled at Appomattox.

When a federal constitutional question is raised in any of the trial courts of ·Colorado the right is given, and the duty is imposed upon those courts, by that instrument itself, to adjudicate and determine it. That right so given, can neither be taken away nor that duty abrogated by the State of Colorado, by constitutional provision or otherwise, and any attempt to do so is null and void. Such pretended constitutional inhibition is no part of the Constitution of the State of Colorado, and the judge's oath binding him to the support and enforcement of that instrument has no

relation to such void provisions. The question may be brought by writ of error to this court for review, and from our judgment the cause may be taken for final determination to the Supreme Court of the United States itself. It cannot be reviewed by popular vote of the citizens of Colorado, or one of its municipalities, and any pretended constitutional provision of this state assuming to provide such method of review is null and void. To hold otherwise is not only to vest in the people of Colorado the power to nullify the United States Constitution, but is likewise to vest that tremendous power in every municipality of this state, having a population of two thousand or more, which sees fit to bring itself within the terms of the Home Rule amendment to our Constitution.

Many authorities might be cited in support of the general principles herein announced, as many might be cited in support of the proposition that parallel lines can never meet. They would be equally useless.

It is to be observed that the validity of said amended sec. 1, art. VI, so far as it prohibits trial courts from holding statutes and city charters to be in violation of the State Constitution, and assumes to provide a method of recalling decisions of the supreme court so holding, is not herein determined.

In conformity with the views herein expressed, and for the reasons hereinbefore given, we find that the trial court had the power to determine the question which it assumed to adjudicate, that the statute complained of was in fact unconstitutional, and that this decision cannot be reviewed, suspended or reversed by the method attempted to be provided by said amended sec. 1 of art. VI of the State Constitution, but stands upon the same footing as any other decision of this court. The judgment is accordingly affirmed.

MR. CHIEF JUSTICE SCOTT not participating.